J-S42010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 459 MDA 2018 |

Appeal from the Decree Entered February 12, 2018
In the Court of Common Pleas of Lancaster County Orphan's Court
Division at No(s):  2690 2017
CP-36-DP-0000105-2017

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 12, 2019**

J.L.L. ("Mother") appeals from the orphans' court decree entered on February 12, 2018, that involuntarily terminated her parental rights to her son, D.M.L.[1]  We affirm.[2]

---

[1] On the same date, D.M.L.'s father, S.L. ("Father"), relinquished his parental rights voluntarily.

[2] Albert J. Meier, Esquire, Mother's court-appointed counsel, initially filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  However, the ***Anders*** brief was noncompliant insofar as it was not clear that counsel performed a comprehensive examination of the entire record before determining that Mother's appeal was wholly frivolous.  On September 6, 2018, we remanded this case with instructions for counsel to file a motion in the orphan's court to supplement the orphans' court record and then file in this Court either an advocate's brief or an ***Anders*** brief that reflected his review of the entire record.  Counsel complied with our directives, electing to file an advocate's brief that purported to withdraw his request to proceed in accordance with ***Anders***.  ***See*** Mother's brief at 7, 22.  CYS and the guardian *ad litem* filed their replies on November 20, and December 19,

---

*   Retired Senior Judge assigned to the Superior Court.

When D.M.L. was born in May of 2017, Lancaster County Children and Youth Social Service ("CYS") had already been involved with the family for two years due to, *inter alia*, Mother's drug abuse in relation to D.M.L.'s older brother, S.L., Jr. During August 2016, the orphans' court terminated the parental rights of Mother and Father to the older child. Subsequently, in January of 2017, CYS received a report that Mother was pregnant with D.M.L. During that pregnancy, Mother tested positive for cocaine, and she and D.M.L. both tested positive for cocaine following D.M.L.'s birth seven weeks premature.

On June 12, 2017, the juvenile court adjudicated D.M.L. dependent and found aggravated circumstances as to both Mother and Father as a result of the prior termination of their parental rights to S.L., Jr. Consequently, CYS was relieved of its obligation to employ reasonable efforts toward reunification. CYS placed D.M.L. in a pre-adoptive foster home, where he remains. The child's permanency goal is adoption and his concurrent goal is placement with a permanent legal guardian. D.M.L. continues to visit with his older half-brother twice per month. Following a probation violation, Mother was incarcerated on November 21, 2017, with an expected release date in May 2018.

---

2018, respectively. Having retained jurisdiction over this matter, we hereby dismiss counsel's petition to withdraw from representation and address the merits of Mother's appeal.

On December 7, 2017, CYS filed a petition to involuntarily terminate Mother's parental rights to D.M.L. The court appointed Attorney Meier to represent Mother. Nine-month-old D.M.L. continued to be represented by the guardian *ad litem* appointed during the juvenile court proceedings. On January 24, 2018, the orphans' court entered an order incorporating the juvenile court record into the termination-of-parental-rights proceedings. In addition, the orphans' court judge, who did not preside over the dependency proceedings, "ordered transcripts for all [j]uvenile [c]ourt proceedings and independently reviewed the [j]uvenile court record[.]" Trial Court Opinion, 4/13/18, at 2 n.1. Following hearings on January 22 and February 12, 2018, the orphans' court involuntarily terminated Mother's parental rights to D.M.L. pursuant to 23 Pa.C.S § 2511(a)(1), (2), and (b). Mother filed a timely notice of appeal as well as a concise statement of errors complained of on appeal.

Mother raises a single issue. "Did the court err and abuse its discretion in not giving Mother additional time to complete drug rehabilitation and other necessary programs after her scheduled release from prison in May of 2018, as Mother maintains that she is doing everything that she needs to do?" Mother's brief at 7.

We review this claim mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

- 3 -

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

As noted *supra*, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). This Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of § 2511(a) as well as (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Instantly, the certified record supports the juvenile court's decision under subsection 2511(a)(1), and (b).

The relevant subsections provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused of failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), and (b).

Our Supreme Court set forth the proper inquiry under § 2511(a)(1) as

follows:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1998).

As it relates to timing, this Court further explained,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination

- 5 -

of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

**In re N.M.B.**, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **In re A.L.D.** 797 A.2d 326, 337 (Pa.Super. 2002). In this vein, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." **Id**. at 340. As it relates to § 2511(a)(1), "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." **In re C.M.S.**, 832 A.2d 457, 462 (Pa.Super. 2003).

With regard to a parent's incarceration, in **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012), our Supreme Court stated "incarceration neither compels nor precludes termination of parental rights" and outlined the appropriate § 2511(a)(1) analysis in that situation:

> [a]pplying [**In re: Adoption of McCray**, 331 A.2d 652, 655 (Pa. 1975),] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." We observed that the father's incarceration made his performance of this duty "more difficult." **Id.**

. . . .

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, *supra* at 828 (quoting *In re: Adoption of McCray*, *supra* at 655) (footnotes and internal quotation marks omitted).

The crux of Mother's argument is that the orphans' court discounted the effect of her incarceration when it terminated her parental rights on February 12, 2018. Highlighting her completion of a New Beginnings program during her six months of imprisonment, and her attempts to enter additional substance abuse and parenting programs during that period, Mother contends that she addressed her underlying substance abuse problems despite the obstacle of incarceration. She asserts that she has maintained sobriety since July 2017. Mother further notes her plan to engage in "long term substance abuse rehabilitation center, probably for several months[,]" before eventually transitioning to reunifying with her son. Mother's brief at 19. Thus, Mother argues that "she did what she could do to prepare herself for reunification" and contends that the orphans' court abused its discretion in neglecting to

grant her additional time to complete additional programs once she is released from prison. For the following reasons, we disagree.

Mother overstates the impact of her six-month incarceration. As noted, *supra,* while the fact of incarceration does not compel the termination of parental rights, it may be a relevant consideration. The proper inquiry examines whether a parent utilized available resources to overcome the obstacles of incarceration. "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his [or her] other rights may be forfeited." **In re Adoption of S.P.**, **supra** at 828.

Mother completed one alcohol program while she was incarcerated and requested to participate in two maintenance programs. However, since § 2511(b) excludes from the orphans' court's § 2511(a)(1) analysis any remedial efforts that a parent initiates after the filing of the petition to terminate parental rights, even those negligible efforts fail. Accordingly, Mother's incarceration did not impact the termination of her parental rights.

Furthermore, absent consideration of Mother's recent efforts, the record belies her contention that she has started to address her substance abuse problems. D.M.L. tested positive for cocaine as a newborn, and the juvenile court adjudicated him dependent with a finding of aggravated circumstances approximately one month later. Six months after those adjudications, and with no improvement from Mother, the agency filed a petition to terminate Mother's parental rights. Significantly, as it relates to Mother's instant claim,

she was incarcerated only two weeks prior to the date CYS sought to terminate her parental rights, and the agency cited neither the fact of Mother's incarceration nor its effect on her ability to parent D.M.L. as a ground to terminate parental rights.

Moreover, while Mother requests additional time to address her substance abuse problems, she failed to present any evidence to support her protestation that she made any significant progress toward that endeavor since CYS terminated her rights to her older child during 2015. Thus, her current claim is unavailing. **See In re A.L.D. supra** at 340 ("A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."). No relief is due.

Next, while Mother did not contest the orphans' court's § 2511(b) determination in her statement of questions presented, she assails the court's decision in the argument section of her brief. Pursuant to Pa.R.A.P 2116, this Court may disregard issues that are not identified in the statement of questions presented.[3] However, in an abundance of caution, and mindful of the three-step review outlined in **In re Adoption of Charles E.D.M.**, **supra**, we address Mother's claim insofar as it implicates D.M.L.'s bests interests.

---

[3] Rule 2116 provides, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

- 9 -

In deciding *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010), we highlighted the following relevant aspects of a orphans' court's § 2511(b) analysis. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *In re: K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008). In addition, as we observed in *In re A.S.*, 11 A.3d 473, 483 (Pa.Super. 2010), "the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent."

In terminating Mother's parental rights, the orphans' court concluded that no parent-child bond existed and that D.M.L.'s current pre-adoptive home best suited his developmental, physical, and emotional needs and welfare. In reaching this decision, the court highlighted the attendant facts that Mother has not seen D.M.L. since the hospital discharged him when he was one month old, and that she never attempted to initiate a relationship with him.

Mother asserts that, given the child's infancy when he was removed from Mother's care, her absence from the child's life is less significant than if

he were an older child. She posits, "The tender age of the child indicates that there is ample time for Mother to complete her plan and still bond with her infant son." Mother's brief at 20. Again, no relief is due.

We reject Mother's attempt to diminish the damaging effects of her complete absence from her son's life by invoking the elasticity of infancy and the restorative properties of the passage of time. First, the child's age does not wholly mitigate the consequences of Mother's pronged absence and complete failure to perform parental duties. Furthermore, Mother's argument ignores the palpable advantage that inures to the benefit of D.M.L. through his relationship with his pre-adoptive family. As we previously observed in *In re A.S.*, *supra* at 483, "the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." The certified record demonstrates that D.M.L. is thriving in his current environment and that his pre-adoptive family supports the continuation of his relationship with his older half-sibling. In light of Mother's complete absence from D.M.L.'s life and the beneficial relationships that D.M.L. shares with his pre-adoptive family, it is obvious that his need for stability and permanency would be best served by the termination of Mother's parental rights in anticipation of adoption. Thus, we sustain the trial court's conclusion that clear and convincing evidence supports the termination of Mother's parental rights with respect to § 2511(b).

For all of the foregoing reasons, we affirm the decree terminating Mother's parental rights to D.M.L. pursuant to § 2511(a)(1), and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/12/2019